# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CYNTHIA MADEJ,** *et al.*,

      Plaintiffs,

                                                Civil Action 2:16-cv-658
                                                Chief Judge Edmund A. Sargus, Jr.
      v.                                      Magistrate Judge Chelsey M. Vascura

**ATHENS COUNTY ENGINEER
JEFF MAIDEN,**

      Defendant.

## OPINION AND ORDER

This dispute arose out of the road resurfacing "chip and seal" project on Dutch Creek Road in Athens County, Ohio. (ECF No. 16, ¶¶ 3-4, at p. 132-133.) Plaintiffs, Cynthia Madej and Robert Madej ("Plaintiffs"), allege that the completion of the "chip and seal" project within one mile of their residence could cause Mrs. Madej serious physical harm or even death. (*Id.* at ¶¶ 6, 7, 8, 11, 15, 23, 33, 39, 41, 42, 48.) Plaintiffs assert claims arising under the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*, as well as state-law claims. Before this Court is Defendant Athens County Engineer Jeff Maiden's (the "Engineer") May 15, 2017 Motion to Compel per Federal Rule of Civil Procedure 35(a) (ECF No. 21) and Plaintiffs' June 5, 2017 Motion for Protective Order (ECF No. 24). The parties also submitted their respective opposition and reply briefs in support. (ECF Nos. 25, 27.) For the reasons that follow, the Engineer's Motion to Compel and Plaintiffs' Motion for Protective Order are **GRANTED IN PART** and **DENIED IN PART**. (ECF Nos. 21 and 24.)

**I.**

According to Plaintiffs' Third Amended Complaint, Plaintiff Mrs. Madej suffers from chemical sensitivity, also known as environmental illness. Citing letters from her physicians, Plaintiff represents that "even small exposures to chemical stressors create a serious hazard for her." (3d Am. Compl. ¶ 6, ECF No. 16.) She therefore contends that the Engineer's proposed road work could cause her serious injury or death. In addition to monetary relief, Plaintiffs seek an order enjoining the Engineer from completing the road resurfacing "chip and seal" project.

On April 12, 2017, the Engineer's counsel sent a letter to Plaintiffs' counsel, seeking to schedule an independent medical examination ("IME") for Mrs. Madej. (ECF No. 21-1, at p. 178.) The Engineer's counsel rejected Mrs. Madej's request for a remote or "Skype" examination and expressed the need for an in person IME "to determine the full nature and extent of her illnesses." (*Id.* at p. 179.) The Engineer's counsel also sought the release of certain medical records. (*Id.*)

On April 25, 2017, Plaintiffs' counsel emailed proposed conditions for the IME. (ECF No. 21-2, at p. 182.) Specifically, Plaintiffs' counsel outlined the following five conditions: (1) the IME to be completed outside (and suggested in Plaintiffs' neighborhood); (2) the doctor to wash his hands with alcohol or wear plastic gloves provided by Plaintiffs; (3) no cologne or any fragrances to be worn or used in the car; (4) the doctor to not fill his car with gas on the day of the IME; and (5) co-plaintiff and husband, Mr. Madej, to be present at the IME "as support" for Mrs. Madej. (*Id.*)

On April 27, 2017, the Engineer's counsel responded by letter to Plaintiffs' proposed conditions. (ECF No. 21-3, at p. 183.) The Engineer's counsel refused to allow the IME to occur outside and suggested, instead, a sealed, negative pressure room at a hospital or a "clean

room" at some industrial assembly plant. (*Id.*) The Engineer's counsel agreed that the doctor would wash his hands with alcohol and that the doctor would not wear any cologne or fragrances. (*Id.* at p. 184.) The Engineer's counsel also agreed that Dr. Baratz, the IME physician, would "make every effort" to control "extraneous substances" if he used a rental vehicle. (*Id.*) The Engineer's counsel added that, "If the rental car needs fueling, a gas station attendance [sic] could put some in if it was needed." (*Id.*) Finally, the Engineer's counsel refused to allow Mr. Madej to attend the IME, but offered that "it could be done with a medical professional chaperone, or videotaped so that what occurs in the examination is memorialized." (*Id.*)

On May 1, 2017, Plaintiffs' counsel followed up on their proposed conditions by email. (ECF No. 21-4, at p. 186.) Plaintiffs' counsel reiterated the necessity of an outdoor IME and expressed concern regarding both the travel to a hospital or other "clean room" locations, as well as the increased potential exposure to substances at those locations. (*Id.*) Plaintiffs' counsel agreed to the washing of the doctor's hands with alcohol and that a gas station attendant could fill up the rental vehicle with gas if necessary. (*Id.*) Plaintiffs' counsel requested that Dr. Baratz "ask the rental car company not to clean a rental car with Frebreze or scented cleaners, and not use air freshener[s]." (*Id.*) Finally, Plaintiffs' counsel again requested that Mr. Madej be permitted to attend the IME. (*Id.*)

On May 15, 2017, the Engineer filed his Motion to Compel per Federal Rule of Civil Procedure 35(a). (ECF No. 21.) The Engineer asserted that Plaintiffs have put Mrs. Madej's medical condition at controversy in light of her allegations that she would suffer serious physical injury or death should the "chip and seal" project proceed. (*Id.* at p. 172.) The Engineer moved this Court for an order compelling the IME of Mrs. Madej with the following conditions: (1) the

IME take place at a hospital or office of a medical professional if the IME cannot be done within Plaintiffs' home; (2) Dr. Baratz be permitted to put gasoline in his rental car, not attempt to control for air fresheners or deodorizers used in the rental car, and that he may use laundry products and soap of his choosing prior to the IME; and (3) Mr. Madej not be present at the examination. (*Id.*) The Engineer attached the affidavit of Dr. Robert Baratz in support of his Motion to Compel. (ECF No. 21-5, at p. 188.)

On June 5, 2017, Plaintiffs filed their Motion for Protective Order, and Memorandum in Opposition to Defendant's Motion to Compel. (ECF No. 24.) Plaintiffs do not debate that Mrs. Madej's physical health is in controversy or that good cause exists to take the IME. Instead, Plaintiffs focus on the conditions under which the IME is to take place. In particular, Plaintiffs express concern over the requirement that Mrs. Madej travel to complete the IME. (*Id.* at p. 207.) In their Opposition Memorandum, Plaintiffs maintain that both the travel and entry to a hospital or other location will cause Mrs. Madej to become ill. (*Id.* at p. 208.) They propose that the IME occur outside in their neighborhood, rather than inside their home, citing the potential long-term contamination of their home from Dr. Baratz's presence. (*Id.* at p. 212-216.) Plaintiffs point out that the Engineer had previously agreed that a gas station attendant would put gas in the car before the IME if necessary and that he would not wear any fragrances. They also maintain that it is reasonable to require Dr. Baratz to request that air fresheners or other scented products not be used in his rental car. (*Id.* at p. 216-218.) Plaintiffs also request that a third party be present for Mrs. Madej's comfort and safety during the IME, with the following order of preference: Mr. Madej, Plaintiffs' counsel, a friend, or a "medical professional chaperone." (*Id.* at p. 218-223.) Plaintiffs additionally suggest that the IME be video recorded. (*Id.* at p. 223-224.) Finally, Plaintiffs request that the Engineer identifies the proposed scope and manner of

the examination in advance and that the Court enter an order restricting the IME from including certain testing that would expose Mrs. Madej to substances to determine whether she would become ill as a result. (*Id.* at p. 224-225.)

On June 19, 2017, the Engineer filed his Reply to Plaintiffs' Memorandum in Opposition Motion to Compel Medical Examination of Cynthia Madej. (ECF No. 25.) In this filing, the Engineer clarified and revised his requests as follows: (1) the IME take place at the office of a physician located in Athens County, or, in the alternative, Plaintiffs' home; (2) Mr. Madej not be present, but agreed to the video recording of the IME; and (3) a finding that Dr. Robert Baratz is qualified to perform the IME and may evaluate Mrs. Madej for a period not to exceed two days at not more than eight hours per day to obtain her full medical history and conduct a physical examination. (*Id.*) The Engineer attached copies of certain medical records of Mrs. Madej to evidence her ability to travel to medical appointments (ECF No. 25-1) and also the supplemental declaration of Dr. Robert Baratz (ECF No. 25-2).

On July 3, 2017, Plaintiffs filed their Reply Memorandum in Support of Plaintiffs' Motion for a Protective Order. (ECF No. 27.) In this filing, Plaintiffs, once again, argue that conducting the IME outdoors would be the best option and that when Mrs. Madej traveled for medical appointments, she had been accommodated by being seen outdoors. (*Id.*) Plaintiffs request an Order prohibiting the IME from including any type of "challenge testing" or otherwise exposing Mrs. Madej to substances that would make her ill. (*Id.*) Plaintiffs also propose that the IME be limited to one in-person four-hour exam, with Plaintiffs' medical history being taken via telephone, also not to exceed four hours. (*Id.*) Finally, although Plaintiffs express agreement with video recording the exam, they repeat their request for Mr. Madej, Plaintiffs' attorney, a friend, or a medical chaperone to be present in order to protect Mrs. Madej's interests. (*Id.*)

Plaintiffs attach a letter response from Dr. John Molot and the affidavit of Mrs. Madej in support. (ECF Nos. 27-1, 27-3.)

On August 1, 2017, the parties appeared for an informal discovery telephone conference with the Court to determine whether these discovery disputes could be resolved amicably. (ECF No. 28.) The parties were able to agree on certain conditions of the IME. First, the parties agreed that Dr. Robert Baratz would not use any cologne, perfume, or other fragrance on his person prior to the IME. Second, with regard to Dr. Baratz's rental vehicle, the parties agreed that Dr. Baratz would not pump his own gas prior to the IME and would also call the rental company to request that no fragrances, deodorizers, or air fresheners be used. Third, the parties agreed that Dr. Baratz would use alcohol to wash his hands. Fourth, the parties agreed to have the IME videotaped. Fifth, the parties agreed that Mr. Madej would not be on the property during the IME. Sixth, although Plaintiffs did not agree to the total length or process by which the IME would be completed, they agreed that, subject to Mrs. Madej's preference to continue, the IME would be limited to four hours per day.

Finally, the parties orally requested that the Court assist with a similar discovery dispute, namely, the proper location of Mrs. Madej's deposition. Plaintiffs' counsel expressed Plaintiffs' preference to complete the deposition by video conference from their home. Defense counsel requested that the deposition be in-person and inside. Ultimately, the parties agreed to complete the deposition in-person, outside Plaintiffs' home. The parties also agreed to limit the deposition attendees to Plaintiffs' counsel, the Engineer's counsel, a court reporter, Mrs. Madej, and a law enforcement agent or security guard. The parties further agreed that Mr. Madej will not be permitted to be on the property during the deposition. Plaintiffs agreed to make available all necessary tables, chairs, a canopy, and other equipment for the deposition.

On August 7, 2017, the parties informed the Court that they had extrajudicially reached agreement as to the location of the IME, as well as other parameters. Specifically, the parties agreed that (1) the IME would take place at a medical facility in Athens County, Ohio; (2) to allow a videographer in the same room as the IME, provided that the videographer be subject to the same conditions as the doctor; (3) that Mrs. Madej would also be permitted to have a person stay in the medical facility during her IME, but that she would not be permitted to speak with that person during breaks; and (4) Mr. Madej could neither attend nor drop off nor pick up Mrs. Madej. The parties also agreed to a urine test procedure in advance of the IME date. The IME conditions that remain in dispute were submitted to this Court for determination and are addressed below.

## II.

Federal Rule of Civil Procedure 35 provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order "may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A). The requirements of Civil Rule 35 are "not a mere formality," and "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case," but rather "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Nonetheless, pleadings alone will sometimes meet the requirements of Civil Rule 35. While the "good cause" and "in controversy" requirements of Rule 35 make it clear that "sweeping examinations" are not acceptable, a plaintiff who asserts a physical injury places that injury

clearly in controversy and provides the opposing party with good cause for an examination to determine the existence and extent of such asserted injury or condition. *Id.* at 119, 121.

Here, the parties do not debate whether Mrs. Madej's physical injuries are in controversy. Instead, the parties disagree on the conditions to which the IME should be subject. The Court considers each of these conditions in turn.

## III.

### A. Scope and Length of the IME

Given that the parties do not contest that good cause exists for performing an IME, the Court must specify the "time" and "scope of the examination." Fed. R. Civ. P. 35(a)(2)(B).

The Engineer suggests that Dr. Baratz be provided sixteen hours over two days to obtain Mrs. Madej's full medical history and conduct a physical examination, consistent with the examination performed by Plaintiffs' proposed expert. (ECF No. 25, at p. 256.) The Engineer also asserts that diagnostic testing is necessary to determine whether the use of "chip and seal" causes Mrs. Madej to react. (*Id.*) Plaintiffs, in contrast, ask the Court to limit the in-person IME to one four-hour, in-person exam, with an additional four hours via telephone to take Mrs. Madej's medical history. (ECF No. 27, at p. 315.) Plaintiffs posit that just one eight-hour exam would have a major impact on Mrs. Madej's health. (*Id.*) Plaintiffs further argue that "challenge testing" is unwarranted and inappropriate because it will make her ill and not provide the Engineer with scientifically valid data. (*Id.* at p. 312-313.)

With regard to the appropriate scope of the IME, Courts are generally reluctant to interfere with a physician's medical judgment regarding the appropriate tests or proper examination procedures. *See, e.g.*, *Mitchell v. Home Depot U.S.A., Inc.*, No. 3:11-cv-332, 2012 WL 1366599, at *3 (W.D. Ky. Apr. 19, 2012) (declining to intrude on doctor's expertise on how

to administer the examination); *Powers v. Chase Bankcard Servs., Inc.*, No. 2:10-CV-332, 2011 WL 1882365, at *2 (S.D. Ohio May 17, 2011) (declining to restrict the IME physician from administering a specific type of test); *cf.* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

Here, too, the Court declines to intrude on Dr. Baratz's medical expertise. Plaintiffs' lawsuit is premised upon their allegations that the continuation of the "chip and seal" project will cause harm or death to Mrs. Madej. Consequently, Mrs. Madej's physical health and potential reactions to the "chip and seal" process are central to this dispute. Accordingly, the Engineer has shown good cause for permitting Dr. Baratz to obtain Mrs. Madej's medical history and to perform a physical exam and diagnostic testing to assess whether the "chip and seal" process will cause her to react. Accordingly, Plaintiffs' request for a Court order proscribing certain types of tests is denied.

The Court likewise declines to impose the severe time constraints Plaintiffs propose. *See Powers*, 2011 WL 1882365 at *2 (declining to limit the scope of the examination to a certain period of time as it would impose unreasonable and unwarranted constraints on the defendant's ability to litigate its case). Nevertheless, in consideration of Plaintiffs' representations concerning Mrs. Madej's health and limitations on her ability to tolerate eight-hour examination days, the Court finds that certain conditions on the IME and the length of the exam are warranted. Specifically, the IME will be conducted in approximately four-hour periods from day to day until the examination is completed, with the total examination time not to exceed sixteen hours. Mrs. Madej will be permitted to take breaks as she deems necessary during the IME, and it will be her personal decision whether to continue the exam during the day or stop after four

hours. If Dr. Baratz determines that Mrs. Madej's health becomes at risk due to the diagnostic testing, he is to immediately suspend the exam, to be continued upon her recovery. As agreed by the parties, the IME will be video recorded.

**B.      Presence of Third-Party During IME**

As discussed above, Plaintiffs initially sought to condition the IME on attendance of Mr. Madej, Plaintiffs' counsel, a friend, or a "medical professional chaperone." (ECF No. 24, at p. 218-223.) In support of this condition, Plaintiffs identify concerns over whether the IME will become an adversarial process, whether Dr. Baratz is truly independent, and whether Mrs. Madej may become "cognitively impaired" during the IME. (*Id.* at p. 219-223). During the August 1, 2017 telephone conference, the parties agreed that the IME would be video recorded and Mr. Madej would not be present. On August 7, 2017, the parties further agreed to allow a videographer in the same room as the IME, provided that the videographer be subject to the same conditions as Dr. Baratz. The parties also agreed to allow a person to remain in the medical facility during the IME, as long as Mrs. Madej would not speak to this individual during breaks. Thus, the only remaining issue is whether Plaintiffs' counsel, a friend, or a "medical professional chaperone" will be permitted in the same room while the IME is being performed.

In general, "[u]nless the opposing party demonstrates a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination." *Spencer v. Huron County*, No. 15-cv-12209, 2016 WL 4578102, at *3 (E.D. Mich. Sept. 2, 2016) (citations omitted); *see also Stefan v. Trinity Trucking, LLC*, 275 F.R.D. 248, 250 (N.D. Ohio 2011) ("Federal courts have determined that third parties—whether human or electronic—cannot sit in on physical and mental examinations under Federal Civil Rule 35 unless special circumstances require it. These circumstances, however, must be balanced against the interests

of the parties involved in the litigation."). The party seeking to allow a recording or an observer's presence of an examination bears the burden of demonstrating either a special need or good cause for the request. *Id.* Moreover, courts have determined that "comfort" is not sufficient good cause to require presence of a third party during an IME. *See Kuzner v. Bonefish Grill, LLC*, No. 1:12-cv-464 (S.D. Ohio Apr. 16, 2013).

The Court finds that Plaintiffs have not met their burden of establishing a special need or good cause for attendance of Plaintiffs' counsel, a friend, or a "medical professional chaperone." Neither Plaintiffs' allegations regarding the adversarial nature of the IME nor their concerns regarding the impartiality of the physician suffice. *See Elder v. Harrison Twp.*, No. 10-cv-13144, 2014 WL 6668696, at *13 (E.D. Mich. Nov. 24, 2014) (finding that the adversarial nature of such exams is not a demonstration of special needs); *Powers*, 2011 WL 1882365 at *3 (refusing video recording of the examination despite allegations of adversariality). Moreover, Plaintiffs' concerns over Mrs. Madej's mental capacity and the physician's actions during the examination are remedied by the parties' agreement to videotape the IME.

Plaintiffs' reliance on *Kuslick v. Roszczewski*, No. 09-12307, 2012 WL 899355 (E.D. Mich. Mar. 16, 2012), fails to persuade. In contrast to this case, the *Kuslick* plaintiff denied that her condition was at issue. Significantly, *Kuslick* relied solely on a 1984 decision from another district and circuit, *Zabkowicz v. West Bend Co.*, 585 F. Supp. 635 (E.D. Wisc. 1984), a case that at least one Ohio District Court has rejected. *See Stefan*, 275 F.R.D. at 250 (pointing out that *Zabkowicz* "relied on no prior case law" and has not been followed "by any subsequent courts."). The *Kuslick* Court also failed to distinguish or even acknowledge the majority of federal district court cases weighing in on this issue, including those within this circuit. *See Elder v. Harrison Twp.*, No. 10-CV-13144, 2014 WL 6668696, at *4 (E.D. Mich. Nov. 24, 2014) (rejecting

*Kuslick*, instead finding the majority of federal courts across the country "to be more persuasive than the unpublished *Kuslick* decision, which is not binding on this Court and does not recognize or analyze the widely accepted special need/good cause standard").

In sum, no additional third party will be permitted in the room during the IME. *Cf. Underwood v. Fitzgerald*, 229 F.R.D. 548, 549 (M.D. Tenn. 2005) (finding that the presence of an observer at a Civil Rule 35 exam could distort the results). The only persons permitted in the examination room at the IME are Mrs. Madej, Dr. Baratz, and the videographer. The IME shall be video recorded. Dr. Baratz and the videographer shall be subject to the following agreed-upon conditions: neither will use any cologne, perfume, or other fragrance on his/her person prior to the IME; neither will pump his/her gas to his/her vehicle prior to the IME; if either use a rental car, they will call the rental car company in advance of the IME and request that the rental car company use no fragrances, deodorizers, or air fresheners; and both will use alcohol to wash their hands. The videographer should remain in the room during the IME only to the extent necessary, a determination left to the videographer's discretion. In addition, as agreed, Mrs. Madej is permitted to have a person stay in the medical facility in another room during the IME, but shall not speak or interact with that individual during breaks. Mr. Madej shall not be on the premises during the IME or drop off or pick up Mrs. Madej from the medical facility.

**C.    Mrs. Madej's Deposition**

During the August 1, 2017 telephone conference, the parties also raised a discovery dispute regarding the location of and conditions placed upon Mrs. Madej's deposition.

Plaintiffs sought to complete the deposition via video conference or, in the alternative, outside in their neighborhood. Plaintiffs expressed that as with the IME, they were concerned that requiring Mrs. Madej to travel to the deposition would negatively impact her health. The

Engineer requested that the deposition occur in-person and inside. The Engineer also raised concerns regarding the safety of counsel and the court reporter should Mr. Madej attend the deposition. Beyond personal preference and safety concerns, counsel for the Engineer did not offer any reason why the deposition could not occur at Plaintiff's residence or why it could not proceed outdoors.

Pursuant to Federal Rule of Civil Procedure 30(b)(1), the party noticing the deposition initially selects the deposition's location. Fed. R. Civ. P. 30(b)(1); 8A Charles Alan Wright, Arthur R. Miller, Richard L. Markus, Federal Practice & Procedure § 2112 at 73 (2d ed. 1994) ("[T]he examining party may set the place for deposition of another party wherever he or she wishes, subject to the power of the court to grant a protective order under Rule 26(c)(2) designating a different place."). Federal Rule of Civil Procedure 26(c) affords district courts "wide discretion to limit discovery to prevent 'annoyance, embarrassment, oppression, or undue burden or expense,' including with regard to the designation of the time and place of depositions." *Lomax v. Sears, Roebuck & Co.*, No. 99-6589, 2000 WL 1888715, at *3 (6th Cir. Dec. 19, 2000) (quoting Fed. R. Civ. P. 26(c)); *Shannon v. Taesa Airlines*, No. 2:93-CV-689, 1994 WL 931216, at *3 (S.D. Ohio Nov. 10, 1994) ("[U]nder Rule 26(c) of the Federal Rules of Civil Procedure, the Court is vested with the discretion to designate the location of a deposition, and to act so as to protect any party from undue burden or expense."). Because the party noticing the deposition (here the Engineer) initially selects the place of the deposition, it is Plaintiffs who are seeking protection. As such, they must establish that good cause exists under Rule 26(c)(1) for the protections they seek. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To do so, Plaintiffs must illustrate the potential for "'annoyance, embarrassment, oppression, or undue burden or expense' . . . with 'a particular and specific demonstration of fact, as

distinguished from stereotyped and conclusory statements.'" *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

Applied here, the Court concludes that Plaintiffs have not shown good cause to conduct Mrs. Madej's deposition via video conference. However, in light of Plaintiffs' allegations relating to the potential harm she may sustain from traveling, the Court finds that good cause exists to conduct Mrs. Madej's deposition outside her home. In contrast to the IME, the Engineer has failed to offer an explanation as to why the deposition cannot proceed outdoors.

Furthermore, the parties have agreed to complete Mrs. Madej's deposition outside Plaintiffs' home with the following conditions: (1) Mr. Madej shall not be on Plaintiffs' property during the deposition; (2) Plaintiffs are to provide all necessary tables, chairs, canopy, and other equipment for the deposition; (3) the Engineer's counsel is permitted to be accompanied by a law enforcement agent or security guard; and (4) the deposition attendees are limited to Plaintiffs' counsel, the Engineer's counsel, a court reporter, Mrs. Madej, and a law enforcement agent or security guard.

## IV.

In sum, the IME is to go forward at a medical facility before Dr. Baratz and a videographer with the following conditions: (1) neither Dr. Baratz nor the videographer shall use any cologne, perfume, or other fragrance on his/her person the day of the IME; (2) neither Dr. Baratz nor the videographer shall pump his/her gas to his/her vehicle on the day of, prior to, the IME; (3) if a rental car is necessary, Dr. Baratz and/or the videographer shall call the rental car company in advance of the IME and request that the rental car company use no fragrances, deodorizers, or air fresheners; (4) both Dr. Baratz and the videographer shall use alcohol to wash

their hands; (5) the IME shall be conducted in approximately four-hour periods from day to day until the examination is completed, not to exceed sixteen hours in total; (6) Mrs. Madej will be permitted breaks as she deems necessary during the IME, and it shall be her personal decision whether to continue the exam during the day or stop after four hours; (7) if Mrs. Madej's health becomes at risk due to the diagnostic testing, Dr. Baratz shall immediately suspend the exam, which shall be continued upon her recovery; (8) the only persons permitted at the IME are Mrs. Madej, Dr. Baratz, and the videographer; (9) the IME shall be video recorded; (10) Mr. Madej shall not be permitted on the property during the IME; (11) the videographer shall be in the room for the IME only to the extent the videographer determines it necessary; and (12) Mrs. Madej is permitted to have a person stay at the medical facility, in another room, during the IME, but that person shall not speak to or interact with Mrs. Madej during breaks. Mrs. Madej is **ORDERED** to submit to an IME by Dr. Baratz under the terms and conditions articulated in this opinion, and those agreed to by the parties, at a time and date to be agreed by the parties. As such, the Engineer's Motion to Compel (ECF No. 21) and Plaintiffs' Motion for Protective Order (ECF No. 24) are **GRANTED IN PART** and **DENIED IN PART**.

In addition, the deposition of Mrs. Madej will be completed outdoors at Plaintiffs' home with the following conditions: (1) Mr. Madej shall not be on Plaintiffs' property during the deposition; (2) Plaintiffs shall provide all necessary tables, chairs, canopy, and other equipment for the deposition; (3) the Engineer's counsel is permitted to be accompanied by a law enforcement agent or security guard; and (4) the deposition attendees shall be limited to Plaintiffs' counsel, the Engineer's counsel, a court reporter, Mrs. Madej, and a law enforcement agent or security guard. Accordingly, the Engineer's oral motion regarding the deposition of Mrs. Madej is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE